**IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE**

STATE OF DELAWARE, )
)
)
)
v. ) ID No. 2305005412
)
)
EMILIO CRUZ, )
)
Defendant. )
)

## <u>ORDER</u>

This 5th day of December, 2025, the Court enters this Order denying Defendant's motion under Rule 61 and contemporaneous motion for appointment of counsel.

1.   Through a confidential informant ("CI"), police arranged for a purchase of drugs from a Roy Fuentes. The purchase was to take place in the parking lot of the Christiana Town Center. Police set up surveillance of the Fuentes residence, located in Elkton, Maryland on the date of the arranged purchase.

2.   Before departing for the drug transaction, Fuentes exited his residence and interacted with the occupants of a Honda CRV that had arrived. After that interaction, Fuentes left in his pickup truck, followed by the CRV. The CRV

continued following the Fuentes vehicle out of Maryland and to the Christiana Town Center.

3. Once at the Town Center, Fuentes parked in the vicinity of the CI/buy location and the Honda CRV moved to a different area of the parking lot, but the occupants remained in the CRV. As soon as Fuentes entered the CI's vehicle, Fuentes was arrested. Other officers boxed in the CRV and its occupants – a man, a woman, and a child – were removed. In exiting the vehicle, the female occupant, later identified as Ciara Sanchez, told police there was a firearm in the car. The Defendant, in the driver's seat, was also removed. Two handguns were located in Sanchez's purse, located on the center console of the CRV. In addition, Defendant was found to have 88 Oxycodone pills on his person.

4. Once back at the police station, the Defendant made a statement during which he admitted that he was in the parking lot to support the drug deal and was there to ensure the deal went smoothly.

5. In addition to the drug charges, the Defendant was indicted for the two weapons found in the purse in the vehicle and various related charges. Because of his prior record, he was facing a mandatory five years each for two counts of possessing a firearm during commission of a felony and ten years each for two counts of possessing a firearm by a person prohibited for a total of thirty years of

2

mandatory minimum time. Finally, because he qualified for sentencing as a habitual offender, he faced a potential life sentence.

6.     The Defense moved to suppress the firearms seized from the CRV, arguing that at the point of the seizure of the CRV in the parking lot, the police did not have probable cause to make an arrest.[1] The State filed a response, and the matter proceeded to a hearing.

7.     At the hearing, the State argued that probable cause was present but that even if it wasn't, at a minimum, there was a reasonable articulable suspicion to investigate the vehicle and its occupants when the police boxed it in.[2] Ciara Sanchez's identification of a firearm in the vehicle supplied whatever deficiency was arguably present when the occupants were confronted. Complicating matters, however, the State presented officers who were present during the Fuentes arrest. Although they were in contact with the officers making the arrest of the CRV occupants, they were not physically present at the CRV. That officer was unavailable for the hearing, as he was out with Covid. The Court therefore recessed the hearing in order to make that witness available to the Defense for cross examination.[3]

---

[1] D.I. 11.
[2] Suppression Tr. at 51.
[3] Suppression Tr. at 79-80.

8. During that hiatus, the State and the Defendant struck a deal: he would plead guilty to one firearm charge carrying a ten-year mandatory sentence, as well as a drug and conspiracy count with suspended sentences. The State agreed to seek no more than the ten-year mandated sentence. The Defendant accepted that plea; a colloquy was undertaken during which he agreed this was his agreement, and he was sentenced as per the terms of the plea agreement.[4]

9. One year later, the Defendant filed this Rule 61 motion.[5] As amended, he claims that his lawyer coerced him into pleading guilty by telling him that they would lose suppression and he would receive a substantially longer sentence, failed to present mental health evidence in mitigation, and failed to object to what the Defendant says was the State's making "incriminating allegations in the record."[6]

10. A Defendant seeking relief under Rule 61 where the record shows he pled guilty to charges has a difficult pleading row to hoe. This is so because the Court undertakes a full review of the charges as indicted and the plea as agreed to before accepting the plea agreement. In addition, the Court conducts a colloquy directly with the Defendant and requires that detailed forms be filed indicating the charges in the plea, the agreement(s) as to sentencing, and the rights being

---

[4] D.I. 23-25.
[5] D.I. 27.
[6] D.I. 34.

surrendered in return for the plea. So, to overturn all these arrangements by the simple act of spilling some words across a page now that one is serving the sentence agreed to, simply won't do. Rather, the movant must show that there has been some fundamental breakdown in the process undermining what he agreed to in open court.

11. Here, the Court solicited, and obtained, an affidavit of Defendant's trial counsel.[7] It reflects the normal operation of a criminal case. The Defendant faced deep jeopardy, his lawyer told him so and got him a deal that he accepted. The lawyer did not see or perceive any undiagnosed mental issues, and none have been presented in the motion. The Court may think that a man of sound mind with two prior drug convictions would not bring a woman, a child, and two handguns to support a drug deal, but that is hardly mental health mitigation that might support a different result. As to his complaint that the State made some material objectionable statements during the limited suppression proceeding, the statements are not identified. The Court has reviewed the transcript of proceedings and sees nothing that would support such an allegation, and in any event, he pled guilty and got exactly what he bargained for. The Court will not presume that some comment by a prosecutor at some point in the proceedings was so outrageous as to render the guilty plea defective or deprive the Defendant of a fair proceeding.

---

[7] D.I. 36.

Finding nothing in the record that warrants it, the Court denies relief under Rule 61 and further denies Defendant's request for the appointment of counsel.

**IT IS SO ORDERED.**

/s/ **Charles E. Butler**
Charles E. Butler, Resident Judge

cc:    Prothonotary
Emilio Cruz (SBI 00655074)
Beth Savitz, Deputy Attorney General